THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNY RAY ROBINSON, Defendant-Appellant.

Fifth District   No. 78-5

Opinion filed July 31, 1979.

Michael J. Rosborough and Rafael Schwimmer, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Following a jury trial in the circuit court of Jackson County,

defendant, Johnny Ray Robinson, was found guilty of attempted murder and armed robbery and sentenced to respective terms of imprisonment of 10 to 20 years and six to 18 years to be served concurrently. Defendant raises two issues on appeal: whether the jury was properly instructed on the elements of attempted murder; and whether the trial court erred in refusing his tendered jury instructions on witness identification.

The present murder attempt allegedly occurred when defendant shot Gregory Prineas with a pistol near the lake on the campus of Southern Illinois University at Carbondale. Defendant apparently approached Prineas around 1 a.m. on December 31, 1976, while Prineas was playing pinball at a poolroom in Carbondale and asked him if he would assist defendant in jump-starting his automobile. Prineas agreed, thinking that defendant's car was parked in the same parking lot as his own. Once outside, defendant informed him that his car was located elsewhere. Following defendant's instructions, Prineas drove to a parking lot behind a funeral home and parked his car next to a station wagon. Defendant went to the car and returned with a pistol which he pointed at Prineas. After directing Prineas to the passenger side of the automobile, defendant drove the car away, keeping the pistol fixed on Prineas. As they drove around the university campus, defendant told Prineas he was going to kill him. He also threatened to shoot Prineas and throw him in the lake and said something to the effect that Prineas had been born in Carbondale and was going to die there too. While stopped at a stop sign, defendant took Prineas' keys and wallet. After negotiating several of the curves on Douglas Drive, near the lake, defendant stopped the car and ordered Prineas to get out and lie on the ground. Prineas obeyed. Defendant then walked around the car and fired at Prineas, wounding him in the hip. After the shot, Prineas got up and started to run. He ran up a nearby hill while defendant took numerous shots at him, one of which hit him in the shoulder. After defendant drove off, Prineas made his way to a home and summoned the police and an ambulance. Prineas' car was subsequently located by the police in a damaged condition, and prior to trial, Prineas identified defendant as his assailant both in a lineup and a photographic display.

Defendant's first contention is that instructional error was committed when, over defendant's objection, the trial court gave an instruction defining murder which permitted the jury to find him guilty of attempted murder without a finding of a specific intent to kill. We agree.

The jury was properly instructed through People's Instruction No. 8 that:

"To sustain the charge of attempt, the State must prove the following propositions:

First: That the defendant performed an act which constituted a

substantial step toward the commission of the crime of murder; and

Second: That the defendant did so with the intent to commit the crime of murder."

However, over defendant's objection that the instruction was confusing and could lead the jury to believe that there was an element of intent other than that which was necessary for the crime of attempted murder, the jury was instructed through People's Instruction No. 9, which was based on the definition of murder contained in subsection 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1)) that:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual."

■■ ■ In *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33, our supreme court found the giving of an identical instruction defining murder to be error since it permitted the jury to find the defendant guilty of attempted murder if he acted only with the intent to do great bodily harm rather than with the intent to cause death. In reaching this conclusion, the court stressed the fact that the crime of attempted murder requires a specific intent to kill. As stated by the *Harris* court:

"An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." (72 Ill. 2d 16, 27, 377 N.E.2d 28, 33.)

We follow our supreme court's holding that the instruction used here wholly fails to state that requirement with clarity to the jury. We therefore find that the trial court erred in submitting this instruction.

The State makes the argument that this instruction was proper under the law in effect at the time of trial as expressed by our supreme court in *People v. Muir* (1977), 67 Ill. 2d 86, 365 N.E.2d 332, and that we would be unfairly applying *Harris* retroactively if we were to find error here. We cannot agree because *Muir* has absolutely no application to the issue at bar. *Muir* dealt only with the propriety of a murder instruction in an attempted murder prosecution which was patterned after the wording of subsection 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)), not subsection 9—1(a)(1) (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1)). As the author of the *Muir* opinion made clear in both the *Muir* opinion and his dissent in *Harris*, *Muir* did not stand for the proposition that one may be guilty of attempted murder if he intended only to do great bodily harm. It merely held that the definition of murder contained in subsection 9—1(a)(2), which refers to defendant's knowledge of the probable consequences of his acts rather than intent, could not be construed if used in an instruction to imply that a defendant

could be convicted of attempted murder if he merely intended to inflict great bodily harm or to contradict the requirement of attempted murder that defendant intended to commit the crime of murder, that is, to take the life of another. It was only this narrow interpretation of section 9—1(a)(2) instructions which was overturned by the supreme court in *Harris* in deciding the consolidated case of *People v. Shields* (Docket No. 50340). Since the problem presented by our instruction which expressly refers to a defendant's intent to do great bodily harm was not addressed in *Muir*, the giving of the present instruction could not have been done in accordance with or in reliance on that opinion. Consequently, the State's argument is without merit.

■■ Although, as we have already stated, it was error to give People's Instruction No. 9 over defendant's objection, we find that the error does not warrant reversal considering the facts of this case. We agree with the conclusion of the court in *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793, that an instructional error under the rule of *Harris* may be harmless if the facts of a case leave no doubt that the defendant acted with the specific intent to kill.

In the present case, a review of the facts leaves no doubt that defendant shot Gregory Prineas with the specific intent to kill him. Consequently, the error in giving the instant instruction is harmless beyond a reasonable doubt. This is one of the rare cases where the subjective intent of the defendant is discernible without resort to implication solely from his acts. Although the manner in which defendant first shot Prineas (at close range while he lay helpless on the ground), standing alone, would show the act was done with no other intent than the intent to kill, defendant's intent to kill was also made known through his own words. Defendant specifically told Prineas before he shot him that he was going to kill him. As if his intention might have been unclear, defendant went on to tell Prineas that he would die in Carbondale just as he had been born there. Defendant also stated that he was going to shoot Prineas and throw him into the lake. These statements show beyond any doubt that defendant's acts were done with the intent to kill. Even if the correct instruction had been given, the jury could only have found that defendant acted with the specific intent to kill Gregory Prineas and was guilty of attempted murder.

■■ Defendant's final contention is that since one of his defense theories was erroneous identification, the trial court erred in refusing to give two non-IPI instructions tendered by him on witness identification which were based on the model instructions approved in the Federal cases of *United States v. Barber* (3d Cir. 1971), 442 F.2d 517, and *United States v. Telfaire* (D.C. Cir. 1972), 469 F.2d 552.

In the recent case of *People v. Hefner* (1979), 70 Ill. App. 3d 693, 388

N.E.2d 1059, this court rejected an identical argument with respect to instructions based on these same cases. What we said there is equally appropriate to the present case and dispositive of this issue:

> "The decision whether to give a non-IPI instruction is within the sound discretion of the trial court (*People v. Hines*, 28 Ill. App. 3d 976, 329 N.E.2d 903 (5th Dist. 1975)), which, in the present case, was not abused. Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) provides that non-IPI instructions, when given, 'should be simple, brief, impartial, and free from argument.' In addition, IPI Criminal No. 3.15 recommends that no instruction be given on identification and concludes that this subject is adequately covered by IPI Criminal No. 1.02 ('Jury is Sole Judge of Credibility of Witnesses').
>
> In *People v. White*, 58 Ill. App. 3d 226, 374 N.E.2d 250 (4th Dist. 1978), and *People v. Attaway*, 41 Ill. App. 3d 837, 354 N.E.2d 448 (1st Dist. 1976), which considered arguments almost identical to the one presented by the instant defendant, it was held that the *Telfaire* instruction did not comport with the requirements of Rule 451(a) and was properly refused when the court, as in the present case, submitted IPI Criminal No. 1.02 and IPI Criminal No. 2.03 ('Presumption of Innocence—Reasonable Doubt—Burden of Proof Generally') to the jury. We agree with IPI Criminal 3.15 and *People v. White* that discussion of the factors surrounding the circumstances of an identification are better left to closing argument than to instructions. Accordingly, we hold that the trial court did not err in refusing defendant's instructions * * *." 70 Ill. App. 3d 693, 697, 388 N.E.2d 1059, 1062.

For the reasons stated, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

G. MORAN and KUNCE, JJ., concur.