THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. WILLIAM MYERS HARRIS, Appellee.—THE
PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JOHNNIE E. SHIELDS, Appellee.

*Opinion filed May 26, 1978.*

RYAN, UNDERWOOD, and CLARK, JJ., concurring in part and dissenting in part.

William J. Scott, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Champaign (Donald B. Mackay and Melbourne A. Noel, Assistant Attorneys General, and Robert C. Perry, of the Illinois State's Attorneys Association Prosecutor's Appellate Service, of counsel), for the People.

Richard J. Wilson, Deputy Defender, and Richard E.

Cunningham, Assistant Defender, of the Office of the State Appellate Defender, for appellee.

William J. Scott, Attorney General, of Springfield, and Michael M. Mihm, State's Attorney, of Peoria (Donald B. Mackay and Melbourne A. Noel, Assistant Attorneys General, of Chicago, and James E. Hinterlong, of the State's Attorneys Appellate Service Commission, of Ottawa, for the People.

Mary Robinson, Deputy Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

Each of these two appeals, which were consolidated here for decision, involves a conviction on a charge of attempted murder in which the adequacy of the instructions given on the element of intent is put in issue.

In cause No. 49909, People v. William Myers Harris, the defendant was convicted on a charge, made by information, of the attempted murder of Joyce Baker on the night of November 18, 1975, in a country area east of Champaign. In a separate count the defendant was charged with aggravated kidnapping.

The alleged murder attempt took place while Miss Baker was sitting inside her car and the defendant was standing behind the car with a pistol in his hand. The defendant and Miss Baker had been keeping company. For much of the evening they had been engaged in an argument in which the defendant accused the victim of infidelity. As the argument became more heated, the defendant, who was driving, reached down and picked up a

revolver from the floor of the car and placed it in his lap with the barrel pointed toward Miss Baker. He made several remarks which Miss Baker interpreted as threats to kill her.

Alarmed, she opened the door on her side of the car, got out and began to run away, but ran into a barbed wire fence, injuring her leg. The defendant also got out of the car. He did not pursue her, but remained standing by the car. After her collision with the fence, Miss Baker returned to the car, and made an unsuccessful attempt to capture the gun, which the defendant was holding in his hand and pointing in her general direction. Miss Baker then got into the car on the driver's side, and drove off toward a nearby farmhouse. She testified that as she drove off she looked in the rear vision mirror and saw the defendant standing behind the car. He was holding the gun with both hands, and pointing it at her. Then she heard something strike the rear window, and the broken pane of glass in the rear window fell out of its frame. There were no other witnesses, but following this episode the police were summoned, and they found the defendant walking down the road near the scene of the episode just described. When the car was located, the police officers testified, the rear glass was broken, and a bullet fragment was found on the left side of the rear seat.

The jury returned a verdict of guilty on the charge of attempted murder and a verdict of not guilty on the aggravated kidnapping charge. The defendant was sentenced to serve a term of not less than 4 years and not more than 12 years.

The information charged that the defendant "committed the offense of ATTEMPTED MURDER (CLASS 1 FELONY), in violation of Section 8—4 of Chapter 38 of the Illinois Revised Statutes of 1973, as amended, in that he, with the intent to commit the crime of murder of Joyce A. Baker did an act which constituted a substantial

step toward the commission of that offense by shooting a gun at her." No complaint is made as to the information.

The following instructions to the jury were tendered by the State and were given, over the objection of the defendant:

> "A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder. The crime attempted need not have been committed."

> "To sustain the charge of attempt, the State must prove the following propositions:
>
>> *First:* That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and
>>
>> *Second:* That the \defendant did so with intent to commit the crime of murder.
>>
>>      \*    \*    \*"

> "A person commits the crime of murder who kills an individual if, in performing 'the acts which cause the death, he intends to kill or dq great bodily harm to that individual."

The defendant objected to the last of the instructions on the ground that it told the jury it could find him guilty of attempted murder if the jury found that he had acted only with the intent to do great bodily harm and did not have the intent to cause death.

The Appellate Court for the Fourth District, whose opinion issued before *People v. Trinkle* (1977), 68 Ill. 2d 198, was decided, held that the defendant's objections had been waived since they were not renewed in his post-trial motion. The court also stated that the last instruction was proper under our decision in *People v. Muir* (1977), 67 Ill. 2d 86. The court therefore affirmed the conviction. *People v. Harris* (1977), 48 Ill. App. 3d 1074 (order under Supreme Court Rule 23).

The appellate court nevertheless held that the minimum sentence of four years was improper, since the record

showed that that sentence was imposed because the trial court believed it was mandatory, a view which the appellate court found erroneous. The court accordingly remanded the cause for resentencing. The State appealed from this part of the judgment. This court subsequently decided in *People v. Moore* (1978), 69 Ill. 2d 520, that a minimum sentence of four years is not required on conviction of attempted murder, and in its reply brief the State has confessed error on this point. In his answering brief the defendant, as he may do under Rule 318(a) (58 Ill. 2d R. 318(a)), challenges the portion of the decision relating to the instructions.

In cause No. 50340, People v. Johnnie E. Shields, the defendant was indicted for the attempted murder of Marion Bradley and for aggravated battery arising out of the same act. The offense was the aftermath of a fight between the defendant and the victim's son, Robert, which took place in the defendant's apartment (which adjoined the apartment occupied by Mrs. Bradley and her son) in the early morning hours of New Year's day. The testimony is in conflict on many points. It requires only a brief summary, however, since its sufficiency to sustain the conviction is not challenged here.

It appears that Robert was highly intoxicated, that he had stumbled against a table and broken it, and that the defendant was attempting to subdue him. After the fight Robert and his mother went back to their apartment. A short time later the defendant appeared at their door armed with a shotgun, and said, "I'm going to kill you." Robert and the victim fled outdoors, pursued by the defendant. The victim then stationed herself in front of Robert to shield him. The defendant told her to move aside, or he would blow her brains out, and after a short scuffle over the possession of the gun, he fired, wounding her.

The jury found the defendant guilty of both at-

tempted murder and aggravated battery, but the trial court entered judgment only on the former. It imposed a sentence of imprisonment of not less than 7 and not more than 21 years.

The count of the indictment relating to attempted murder charged that the defendant had committed the offense of attempted murder "in that with the intent to commit the offense of MURDER *** he did an act which constitutes a substantial step toward the commission of that offense, in that he did shoot Marion Bradley in the chest with a shotgun, knowing that such act created a strong probability of death or great bodily harm to Marion Bradley." The defendant makes no complaint to the indictment.

The State tendered the following instructions which were given:

> "A person commits the crime of attempt who, with intent to commit the crime of Murder, does any act which constitutes a substantial step toward the commission of the crime of Murder.
>
> The crime attempted need not have been committed."
>
> "To sustain the charge of attempt, the State must prove the following propositions:
>
> FIRST: That the defendant performed an act which constituted a substantial step toward the commission of the crime of Murder; and
>
> SECOND: That the defendant did so with intent to commit the crime of Murder."
>
> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or great bodily harm to that individual."

No objection to these instructions pertinent to the issue on this appeal was made by the defendant.

On appeal the Appellate Court for the Third District affirmed. (*People v. Shields* (1977), 54 Ill. App. 3d 1020.) In so doing it held that the instruction concerning the

"probability of death or great bodily harm" was proper in the light of *People v. Muir* (1977), 67 Ill. 2d 86, which was at that time our most recent pronouncement on that subject. On rehearing, however, the appellate court altered its opinion and reversed, holding that instruction improper in view of this court's later decision in *People v. Trinkle* (1977), 68 Ill. 2d 198, which had by then been filed.

The central difficulty common to these cases arises out of the difference between the elements of the offense of attempt and those of the specific offense attempted, murder. The definition of attempt, contained in section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a)), is:

> "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

The statutory definition of murder is found in section 9—1(a) of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)), and reads:

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
>
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

The crime of murder is thus committed not only when a person intends to kill another individual, but also when he intends to do great bodily harm (par. 9—1(a)(1)), or when he knows that his acts create a strong probability of death or great bodily harm (par. 9—1(a)(2)), or when he is

attempting or committing a forcible felony (par. 9—1(a)(3)).

This court held in *People v. Koshiol* (1970), 45 Ill. 2d 573, that in a trial for attempted murder it is not error to give an instruction defining the elements of murder. As was stated there, "[I] t would seem utterly meaningless to instruct a jury on attempt to commit a 'specific offense' without defining the specific offense ***." (45 Ill. 2d 573, 579.) Since an attempted murder requires an intent to kill, however, it is obvious that the "specific offense" referred to in section 8—4(a) cannot be construed as incorporating the alternative definitions of murder contained in section 9—1(a) in their entirety.

The point is illustrated by *People v. Viser* (1975), 62 Ill. 2d 568, in which the indictment in a prosecution for attempted murder charged that the defendants' acts were committed while they were engaged in a forcible felony. With respect to the indictment in *Viser,* it was observed: "[T] he offense of attempt requires 'an intent to commit a specific offense' *** while the distinctive characteristic of felony murder is that it does not involve an intention to kill. There is no such criminal offense as an attempt to achieve an unintended result." 62 Ill. 2d 568, 581.

This court in *People v. Muir* (1977), 67 Ill. 2d 86, and *People v. Trinkle* (1977), 68 Ill. 2d 198, considered, among other questions, whether it was proper in prosecutions for attempted murder to include in instructions to the jury the definition of murder under section 9—1(a)(2), that is, that one commits murder if he knows that his acts "create a strong probability of death or great bodily harm."

In *Muir* the evidence was that the defendant was being approached by a police officer who was investigating a reported burglary at a nearby building. When the officer was about 30 feet away, the defendant pointed a pistol at him and pulled the trigger, but the gun failed to discharge.

The defendant then began to run away. While running he pointed his gun at the officer for a second time, and pulled the trigger. Again the pistol failed to go off. It was subsequently ascertained that the barrel of the pistol contained two cartridges which were jammed in the barrel.

The indictment charged that the defendant "*** did with the intent to commit the offense of Murder in violation of Section 9—1a2 of Chapter 38, Illinois Revised Statutes take a substantial step towards the commission of said offense in that he did without lawful justification point a loaded gun at [name of officer] and pull the trigger knowing such acts created a strong probability of death or great bodily harm ***." 67 Ill. 2d 86, 90.

The appellate court had reversed the conviction (*People v. Muir* (1976), 38 Ill. App. 3d 1051) on the ground that the necessary ingredient of specific intent was lacking in the indictment. This court in turn reversed the decision of the appellate court. It approved those parts of the appellate court opinion which held that it was necessary in a charge of attempted murder to allege a specific intent to commit murder, and that such intent could be inferred from the character of the defendant's actions. It was held, however, that since the indictment did charge that the defendant intended to commit murder, the additional charge that the defendant had acted with the knowledge that his acts created a strong probability of death or great bodily harm did not invalidate the indictment.

In *Muir* the court also rejected a contention by the defendant that it was error for the court to have given at the request of the prosecution an instruction that "[a] person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or great bodily harm to that individual." 67 Ill. 2d 86, 94.

The circumstances in *Trinkle* were these: The defendant had been refused further service at a tavern after the bartender concluded that he was already intoxicated. The defendant, after threatening to "shoot or blow up the bar," left the premises, purchased a gun, returned to the vicinity of the tavern and fired a shot at the front door of the building. The shot struck a patron who, without the defendant's knowing of it, was standing behind the door.

The indictment in *Trinkle* charged in part:

> "David Francis Trinkle committed the offense of ATTEMPT (MURDER) in that said defendant did perform a substantial step toward the commission of that offense in that he did without lawful justification shoot Gayle Lane with a gun knowing that such act created a strong probability of death or great bodily harm to Gayle Lane or another ***." 68 Ill. 2d 198, 199-200.

The following instructions were given to the jury:

> "A person commits the crime of attempt who, with intent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder.
>
> The crime attempted need not have been committed." 68 Ill. 2d 198, 200.
>
> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death he knows that such acts create a strong possibility of death or great bodily harm to that individual or another."
>
> "To sustain the charge of attempted murder, the State must prove the following propositions:
>
> FIRST: That the defendant performed the acts which caused the injury of Gayle E. Lane;
>
> SECOND: That when the defendant did so, he knew that his act created a strong probability of causing death or great bodily harm to Gayle E. Lane, or another; ***." 68 Ill. 2d 198, 200.

This court correctly held that both the indictment and the instructions were defective in that they permitted the jury to find the defendant guilty of attempted murder if it

concluded that the defendant knew that his acts created a strong probability of great bodily harm to another person even if the evidence did not show that the defendant had acted with an intent to kill.

In one of the two appeals now before us, People v. Shields, one of the instructions to the jury is identical to that which was disapproved in *Trinkle*. In the other appeal, People v. Harris, the third instruction states that a person is guilty of the crime of murder "if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual."

Although this instruction follows the language of section 9—1(a)(1) rather than that of section 9—1(a)(2), as in *Trinkle*, it is subject to the same objection that it permits the jury to return a verdict of guilty upon evidence that the defendant intended only to cause great bodily harm short of death. An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown.

The part of the holding in *Muir* that an instruction was not erroneous which charged that proof only that a defendant knowingly and intentionally created a strong probability of death or great bodily harm to another person satisfies the intent element required for attempted murder was error and is hereby overruled. Erroneous also was that part of the holding that an indictment for attempted murder was not defective which alleged that the defendant's acts to his knowledge created a strong probability of death or great bodily harm to another person. That part too of the holding in *Muir* is overruled. Observations of LaFave and Scott (*Criminal Law* sec. 59, at 428-29 (1972)) are representative of authority that it is not sufficient to prove attempted murder to show that the accused intended to cause serious bodily harm:

> "Some crimes, such as murder, are defined in terms
> of acts causing a particular result plus some mental state

which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.,* the death of another)."

In *Harris* the defendant, although he objected to the instruction in question, did not renew his objection in his written post-trial motion. Under Rule 615(a) (58 Ill. 2d R. 615(a)), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Rule 451(c) provides regarding instructions that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." (58 Ill. 2d R. 451(c). See *People v. Pickett* (1973), 54 Ill. 2d 280, 283.) Considering all the circumstances, we are of the opinion that the adequacy of the instruction may be considered here. *Cf. People v. Jenkins* (1977), 69 Ill. 2d 61, 66-67.

In cause No. 49909, People v. Harris, we therefore reverse the judgments of the appellate and circuit courts, and remand the cause to the circuit court of Champaign County for a new trial not inconsistent with this opinion. In cause No. 50340, People v. Shields, we affirm the appellate court.

*49909 — Reversed and remanded.*
*50340 — Judgment affirmed.*

MR. JUSTICE RYAN concurring in part and dissenting in part:

Considerable amount of uncertainty seems to prevail in courts and among members of the bar as to what language is permissible or impermissible in charging attempted murder and in instructing the jury on this offense. Since this court's holding in *People v. Viser* (1975), 62 Ill. 2d 568, that the charge attempted murder could not be based on the definition of murder found in section 9—1(a)(3) (felony murder) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(3)), there have been numerous cases challenging attempted murder indictments and instructions framed under the statutory definitions of murder contained in section 9—1(a)(1) and section 9—1(a)(2) of the Criminal Code. Two of those cases have previously reached this court. (*People v. Muir* (1977), 67 Ill. 2d 86, and *People v. Trinkle* (1977), 68 Ill. 2d 198.) Judging from the number of cases that continue to litigate this issue, it is apparent that the two cases decided by this court did not clarify our position. In fact, it has been hopefully suggested that *Trinkle* has overruled *Muir*. (See Doherty, *The Strange Fate Of Two Men Named David: The Need For Symmetry In The Criminal Law*, 66 Ill. B.J. 518 (1978).) It is hoped that, by addressing the entire subject here, I will be better able to state my position than I was able to do as the author of the opinion while deciding the specific issues presented in *Muir*.

First, in my opinion, *Muir* and *Trinkle* are not inconsistent. The indictments in both cases were framed under the definition of murder found in section 9—1(a)(2), which provides:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
\*\*\*

(2) He knows that such acts create a strong probability of death or great bodily harm ***." (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2).)

The indictment in *Muir* charged that

"*** he did with the intent to commit the offense of Murder in violation of Section 9—1a2 of Chapter 38, Illinois Revised Statutes take a substantial step towards the commission of said offense in that he did without lawful justification point a loaded gun at [name of officer] and pull the trigger knowing such acts created a strong probability of death or great bodily harm ***." (67 Ill. 2d 86, 90.)

The indictment in *Trinkle* charged:

"David Francis Trinkle committed the offense of ATTEMPT (MURDER) in that said defendant did perform a substantial step toward the commission of that offense in that he did without lawful justification shoot Gayle Lane with a gun knowing that such act created a strong probability of death or great bodily harm to Gayle Lane or another ***." 68 Ill. 2d 198, 199-200.

Thus the indictment in *Muir* alleged the specific intent to commit the offense of murder which is necessary to the crime of attempted murder whereas the indictment in *Trinkle* was clearly defective in that it did not allege the specific intent to commit the offense of murder.

In *Muir,* the only instruction that was challenged was the one which defined murder using language substantially the same as contained in section 9—1(a)(2) and stated:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he knows that such acts create a strong probability of death or great bodily harm to that individual." (67 Ill. 2d 86, 94.)

The only objection to this instruction, as voiced by the defendant in *Muir* and apparently as viewed by the majority in these consolidated cases, is that the instruction permits the jury to convict for attempted murder in cases in which the defendant had only the intent to create a

strong probability of great bodily harm. In my opinion that is an erroneous conclusion. The instruction, and that part of the indictment referring to "great bodily harm," do not define the intent of the defendant but are relevant to intent insofar as the nature of the assault and the circumstances surrounding its commission, inferentially establish the requisite intent to take a life (*People v. Muir* (1977), 67 Ill. 2d 86, 91-92). As noted above, the disputed language in both the indictment and the instruction originated in section 9—1(a)(2), which, unlike section 9—1(a)(1), refers to the defendant's *knowledge* and not his *intent.*

Intent and knowledge are defined in the Criminal Code as different mental states. Section 4—4 (Ill. Rev. Stat. 1975, ch. 38, par. 4—4) defines "intent," and the committee comments to section 4—3 state:

> "The use of the word 'intent' in the 1961 Code is limited to conscious objective or purpose to accomplish a described result ***." (Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments, at 256 (Smith-Hurd 1972).)

Section 4—5 defines "knowledge," and the same committee comments indicate that this mental state describes the situation in which a person "while not having an actual intent to accomplish a specific wrongful purpose, is consciously aware of the nature of his conduct or of the result which will (or which is practically certain to) be caused ***." Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments, at 256 (Smith-Hurd 1972).

Thus in *Muir* the indictment charged that the defendant "with the intent to commit the offense of Murder" did perform acts "knowing such acts created a strong probability of death or great bodily harm." The only intent that is charged is "the intent to commit the offense of Murder." Knowing well such acts created a strong probability of great bodily harm, according to the committee comments, does not mean that the defendant intended to cause great

bodily harm. The gist of murder is that death has ensued from wrongful conduct. If the defendant is charged with the specific intent to commit the offense of murder it cannot be said that the additional phrase "knowing such acts created a strong probability of death or great bodily harm" would mislead the defendant to believe that he was charged with only having the intent to cause great bodily harm. This court has held:

"[T] he indictment *** unmistakenly informed the defendant of the precise offense with which he was charged. 'Niceties and strictness of pleading are supported only when a defendant would be otherwise surprised on trial or be unable to meet the charge or prepare his defense.' [Citation.] " (*People v. Nastasio* (1963), 30 Ill. 2d 51, 54.)

The defendant in *Muir* was not misled by the indictment and was well aware of the offense with which he was charged. It is difficult for me to understand the claimed confusion concerning this court's previous holding in *Muir* in light of the fact that the Code has seen fit to distinguish between the mental state of *intent,* required in attempted murder, and the mental state of knowledge as included in the definition of murder in section 9—1(a)(2).

The same rationale applies to the challenged instruction in *Muir*. The instruction was a definition of murder. It was not an issue instruction setting forth what the State must prove beyond a reasonable doubt before the defendant could be found guilty. Instructions in criminal cases must be considered and read together as a series. If the instructions, when considered as a whole, fully and fairly announce the law applicable, the instructions are sufficient. (*People v. Kolep* (1963), 29 Ill. 2d 116, 125.) The complained-of instruction cannot be singled out and considered in isolation from the others. Even if one instruction, when considered by itself, may not be clear or

may create some uncertainty, if, when read as a whole, the instructions properly state the law applicable to the case, a conviction will not be reversed. (*People v. Hartwell* (1930), 341 Ill. 155, 158, 160; *People v. Epping* (1959), 17 Ill. 2d 557, 567; *People v. Kolep* (1963), 29 Ill. 2d 116, 125.) In *Muir,* in addition to the challenged instruction, the court also gave to the jury Illinois Pattern Jury Instruction, Criminal, No. 6.07. It defined the issues that the State must prove beyond a reasonable doubt in attempted murder, one of which is that the defendant committed the acts *with the intent to commit the crime of murder.* Because of the differences in the mental state between intent and knowledge, which have been noted above, the definition of murder contained in the challenged *Muir* instruction did not inform the jury that the defendant could be convicted of attempted .murder if he had the intent only to do great bodily harm to the victim. The specific intent requisite to convict the defendant of attempted murder was spelled out in the issue instruction. The challenged instruction dealt with knowledge, not intent.

In *Trinkle,* the issue instruction told the jury:

> "To sustain the charge of attempted murder, the State must prove the following propositions:
> First: That the defendant performed the acts which caused the injury of Gayle E. Lane;
> Second: That when the defendant did so, he knew that his act created a strong probability of causing death or great bodily harm ***." (68 Ill. 2d 198, 200.)

This issue instruction did not require the State to prove the intent to commit the offense of murder which the issue instruction in *Muir* required. Thus, all that the instructions, taken as a whole, required was that defendant, when he committed the acts, knew that they created a strong probability of death or great bodily harm. Thus, the State was only required to prove the mental state of

knowledge of the probable effect of his acts and not the mental state of intent to commit the offense of murder. The instructions, taken as a whole, were plainly erroneous.

In cause No. 50340, People v. Shields, one of the consolidated cases in this appeal, the charge of attempted murder was based on murder as defined in section 9—1(a)(2), as were the charges in *Muir* and *Trinkle*. As in *Muir*, the indictment charged that the defendant "with the intent to commit the offense of MURDER *** did [perform] an act *** knowing that such act created a strong probability of death or great bodily harm ***." The same reasons which led me to conclude that the indictment in *Muir* was not defective compel a similar conclusion as to this charge, and the defendant made no complaint as to this indictment. The instructions given in Shields' case were similar to those given in *Muir*, including the issue instruction which required the State to prove beyond a reasonable doubt that the defendant had the specific intent to commit the crime of murder. Reading the instructions as a whole, I would hold, as I did in *Muir*, that the instructions were sufficient. I do not agree with the majority that the instruction in People v. Shields is identical with the one disapproved in *Trinkle*. The defect in the *Trinkle* instruction was that the issue instruction permitted the jury to find the defendant guilty without requiring proof that the defendant committed the acts with the intent to commit the offense of murder. No such defect exists in the issue instruction in People v. Shields.

The other case consolidated in this appeal, cause No. 49909, People v. Harris, is framed on the definition of murder as found in section 9—1(a)(1), which provides:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or

another; ·***." (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1).)

As noted in the majority opinion, the jury was also instructed on the definition of murder as defined by this section.

Unlike murder as defined in section 9—1(a)(2), where the mental state is only *knowledge,* murder as defined in section 9—1(a)(1) involves the mental state of *intent.* The instruction given to the jury under section 9—1(a)(1) would permit the jury to find the defendant guilty of attempted murder if his specific intent was either to kill or *do great bodily harm* to that individual. There is a clear conflict between that instruction, the instruction defining attempt, and the issue instruction. As noted above, in discussing *Muir,* an essential element of murder is the unlawful taking of a life, thus an instruction defining attempt and the issue instruction inform the jury that to commit the crime of attempted murder the defendant must have the specific intent to unlawfully take the life of another, whereas the instruction defining murder under section 9—1(a)(1) told the jury that the defendant need only intend to "do great bodily harm." I would agree with the majority that in framing a charge of attempted murder under section 9—1(a)(1) and in instructing the jury on such a charge, the words "or do great bodily harm" must be excised from the definition of murder and from the instruction.

For the reasons stated herein, I concur in the judgment in cause No. 49909, People v. Harris, and dissent from the judgment in cause No. 50340, People v. Shields.

UNDERWOOD and CLARK, JJ., join in this partial concurrence and partial dissent.