THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICARDO NUNO, Defendant-Appellant.

First District (4th Division)   Nos. 1—87—2088, 1—88—2933 cons.

Opinion filed November 21, 1990.

Randolph N. Stone, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Paul Carstensen, and Thomas O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Following a jury trial, defendant, Ricardo Nuno, was found guilty of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1) and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—2). He was sentenced to an extended term of 45 years in the Illinois Department of Corrections.

On appeal, the following issues are presented for review: (1) whether the trial court committed harmless error by giving the jury ambiguous instructions concerning the element of intent required for attempted murder; (2) whether the trial court correctly found that the State met its burden of proving beyond a reasonable doubt that defendant intended to kill the victim, Eric Mendoza; (3) whether the

trial court properly sentenced defendant to 45 years' imprisonment pursuant to the extended-term provisions of the statute (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2)); and (4) whether the trial court properly considered a victim impact statement in sentencing defendant.

We reverse and remand.

BACKGROUND

Evidence produced at trial established that on May 23, 1986, Eric Mendoza saw a white Cadillac automobile parked on the street. Mr. Mendoza walked to a house with one of the neighborhood children to inquire about who owned the car. After the inquiry, Mr. Mendoza approached the automobile and opened the hood to examine the engine.

Three men, including defendant, approached Mr. Mendoza while he was looking at the car. Defendant confronted Mr. Mendoza and accused him of trying to steal parts of the automobile. Witnesses testified that Mr. Mendoza talked to the three men about purchasing the automobile. Shortly after the conversation commenced, defendant pushed Mr. Mendoza; he responded by saying that he did not want any trouble. Whenever Mr. Mendoza attempted to leave, defendant stopped him. Defendant gave Mr. Mendoza "the finger." Then, the two men began to fight. Again, Mr. Mendoza tried to leave. Defendant continued to strike Mr. Mendoza while he was trying to escape. Then, a screwdriver fell out of Mr. Mendoza's pocket.

Witnesses maintain that while Mr. Mendoza was pinned to the ground, defendant picked up the screwdriver and stabbed him in the head twice. After defendant stabbed the victim once, defendant asked the victim whether he had "had enough." Defendant stabbed the victim a second time and thereafter fled the scene. The stabbing took place at 5:30 p.m. on March 23, 1986. Later, witnesses identified defendant and the weapon.

The victim was taken to the hospital by his cousin, Arlette Mendoza, and her husband, Teddy Diaz. He was treated at the hospital by Dr. Jafar J. Jafar, a board-certified neurosurgeon. Dr. Jafar testified that Mr. Mendoza's skull was fractured on the left side, the saggital sinus area was punctured, and the front of his brain was lacerated. Dr. Jafar performed a craniotomy. During the surgery, Dr. Jafar removed a subdural hematoma on top of the brain and debrided (removal of unhealthy tissue) the area of the wound. Dr. Jafar testified that the victim was struck with a pointed instrument such as an ice pick or a screwdriver. He also testified that a neurosurgeon must use power tools to open the skull and that the assailant must have struck

the victim with a great deal of force in order to have penetrated the skull. After the initial surgery, Dr. Jafar performed three additional operations on Mr. Mendoza.

As a result of the stabbing, Mr. Mendoza is unable to walk without the aid of a cane and leg braces. He cannot carry on a normal conversation or control his facial muscles. He can no longer feed himself or fasten his own clothes. Before the attack, he could do everything for himself. He was a healthy, able-bodied young man, and a student of automobile mechanics at the Allied Institute of Technology.

OPINION

The trial court instructed the jury that defendant could be found guilty of attempted murder if it found defendant intended to kill or cause great bodily harm. The specific instructions were as follows:

"THE COURT: A person commits the offense of murder when he kills an individual without lawful justification, if in performing the acts which cause the death, he intends to kill *or do great bodily harm* to that individual, or he knows that such acts will cause death to that individual, or he knows that such acts create a strong probability of death or great bodily harm to that individual. *** A person commits the crime of attempt when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of murder." (Emphasis added.)

Defendant contends that the trial court committed plain error by giving the jury incorrect instructions concerning the requisite element of intent. Defendant alleges that this error violated his rights under the due process clause and that this holding must be reversed even though defense counsel failed to object. The State maintains that defendant waived his right to challenge the jury instructions on appeal and that any error in the jury instructions was harmless error.

■ Initially, the People maintain that defendant waived the right to raise the issue of improper jury instructions on appeal because defendant failed to object to the jury instructions during the trial or the instruction conference. In general, a party who fails to object to instructional error, or fails to raise the issue in a post-trial motion, waives the right to contest the error on appeal. (*People v. Reddick* (1988), 123 Ill. 2d 184; *People v. Lyles* (1985), 106 Ill. 2d 373; *People v. Edwards* (1978), 74 Ill. 2d 1; *People v. Precup* (1978), 73 Ill. 2d 7; *People v. Cregar* (1988), 172 Ill. App. 3d 807.) However, we hold that defendant has not waived appellate review of the jury instructions.

The controlling case on this issue is *People v. Gentry* (1987), 157

Ill. App. 3d 899. In *Gentry*, we held that a party may raise the issue of improper attempted murder instructions on appeal even if he failed to raise the issue at trial. Justice Linn wrote the following: "The record evinces the fact that Gentry did indeed fail to object at trial to the instructions in question. However, the specific intent to kill is an essential element of the crime of attempted murder. [Citation.] Accordingly, \*\*\* we will review this issue \*\*\*." (*Gentry*, 157 Ill. App. 3d at 902.) We must apply the precedent set forth in *Gentry* to the case at bar. Accordingly, we find that defendant did not waive his right to appellate review of the jury instructions. Therefore, this court will review the instructions.

●2 The State also maintains that any error in the jury instructions constituted harmless error because the jury could not have found defendant not guilty of attempted murder even if it had been properly instructed. We disagree. We hold that the jury instructions constituted reversible error because they failed to include the required element of specific intent.

Section 9—1 of the Criminal Code of 1961 defines murder as follows:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> > (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
> >
> > (2) He knows that such acts create a strong probability of death or great bodily harm to that individual \*\*\*." Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2).

A person commits "attempt when, with *intent* to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 8—4(a).

The Illinois Supreme Court has held that the specific intent to kill is a requisite element of attempted murder. "Attempted murder requires a specific intent to commit murder \*\*\*." *People v. Trinkle* (1977), 68 Ill. 2d 198, 202.

■ Furthermore, this court has previously held that "a discrepancy exists between the culpable mental state for attempt, which requires an intent to commit the offense, and the alternative culpable mental states for murder, which include not only intent to kill another, but also intent to do great bodily harm [citation], or knowledge that one's acts create a strong probability of death or great bodily

harm [citation]." (*People v. Kraft* (1985), 133 Ill. App. 3d 294, 299.) This court has also held that "a trial court instructing a jury on the crime of attempted murder must make it clear that *specific intent to kill is the pivotal element of the offense,* and that *intent to do bodily harm,* or knowledge that the consequences of defendant's act may result in death or great bodily harm, is *not enough.*" (Emphasis added.) *People v. Gentry* (1987), 157 Ill. App. 3d 899, 903; see also *People v. Kraft,* 133 Ill. App. 3d at 298, citing *People v. Harris* (1978), 72 Ill. 2d 16, 27.

It has long been established that "an instruction to a jury that it may find a defendant guilty of attempted murder upon its finding that the defendant intended to do great bodily harm is erroneous reversible error." (*People v. Okundaye* (1989), 189 Ill. App. 3d 601, 607; see *People v. Harris,* 72 Ill. 2d at 24, 26-27; *People v. Trinkle* (1977), 68 Ill. 2d 198, 201, 204; *People v. Gentry,* 157 Ill. App. 3d at 903-04, 905-06; *People v. Cantu* (1987), 157 Ill. App. 3d 934, 937-38.) "Reversible error" is a substantial error which prejudices the complaining party. Reversible error warrants a reversal of the lower court's judgment upon appeal. (Black's Law Dictionary 487 (5th ed. 1979); see also *People v. Whitlow* (1982), 89 Ill. 2d 322, 341.) The instructions do not constitute harmless error because the error was prejudicial to defendant.

In the case at bar the instructions given to the jury for attempted murder were erroneous. The jury was instructed that it could find defendant guilty of attempted murder if defendant intended to kill *or* cause great bodily harm. These instructions enabled the jury to convict defendant of attempted murder if it was merely convinced that defendant intended to cause great bodily harm. Intent to cause great bodily harm is not an element of attempted murder. Therefore, the instructions enabled the jury to convict defendant of attempted murder without finding that he specifically *intended* to kill Mr. Mendoza.

Initially, the jury was confused by the court's instructions. The jury's confusion was manifested in a question it addressed to the court during its deliberation. The jury's question read as follows:

> "We would like a clarification if possible, of a statement in the attempted murder propositions. In attempt, the second proposition states 'defendant did so with intent to commit the offense of murder.' Does 'commit the offense of murder' refer to the propositions in the 'murder' definition[?]" (Does the intention to cause great bodily harm also mean the intention to commit murder?)

The jury was confused by the error raised in this appeal, and it went

on to find defendant guilty of attempted murder.

In previous appeals of attempted murder cases involving jury instructions similar to the instructions given in the case at bar, we reversed defendants' convictions and remanded the causes for a new trial. For example, in *People v. Kraft* (1985), 133 Ill. App. 3d 294, this court reversed an attempted murder conviction because "[t]he instructions given *** would have permitted a conviction upon a finding that defendant acted with knowledge that his actions created a strong probability of death even if the jury believed defendant did not intend to kill anyone." (*Kraft*, 133 Ill. App. 3d at 302.) Similarly, in *People v. Cantu* (1987), 157 Ill. App. 3d 934, we reversed defendant's conviction because the instructions were "defective" with respect to the intent element of attempted murder. (*Cantu*, 157 Ill. App. 3d at 935.) Finally, in *People v. Okundaye* (1989), 189 Ill. App 3d 601, we reversed defendant's attempted · murder conviction because the jury instructions were erroneous. We held that "[d]efendant had an absolute right to have the jury determine by accurate governing instructions whether he acted with or was guilty of the specific intent to kill [the victim]." *Okundaye*, 189 Ill. App. 3d at 607.

■ We find that the erroneous ·instructions given in the case at bar encroached upon defendant's right to a fair trial. For the aforementioned reasons, we must reverse defendant's conviction and remand the cause for a new trial.

■■ ■ Defendant next contends that the evidence failed to establish his guilt beyond a reasonable doubt. When an appellate court reverses a ·criminal conviction and remands the cause for a new trial, the appellate court should address defendant's contention that the evidence at trial was insufficient in order to avoid the risk of subjecting the defendant.to double jeopardy. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309.) We find that there was sufficient evidence in the record to establish defendant's guilt beyond a reasonable doubt. Several eyewitnesses testified that defendant insisted upon fighting Mr. Mendoza, who attempted to leave and avoid an altercation. Witnesses also maintained that defendant pinned Mr. Mendoza to the ground and stabbed him in the skull twice. We find that the evidence of defendant's guilt of attempted murder was not improbable or unsatisfactory. (See *People v. Cantu* (1987), 157 Ill. App. 3d 934, 939.) However, our holding here as to the sufficiency of the evidence is not binding on the court on retrial. *Taylor*, 76 Ill. 2d at 310.

.Finally, defendant alleges that the trial court improperly imposed an extended-term sentence and that the trial court improperly considered ·victim impact evidence in sentencing him. We will ·not address

these issues because defendant's guilt depends upon the People proving that defendant had the requisite intent for the crime of attempted murder, which was erroneously defined in the trial court's instruction to the jury. Therefore, because we find this instruction to be reversible error, it is not necessary for us to continue any further.

For the foregoing reasons, we reverse defendant's conviction and remand this cause for a new trial before a properly instructed jury.

Reversed and remanded.

JIGANTI and LINN, JJ., concur.